George **KAISER** and Patricia Kaiser, Plaintiffs-Respondents,

v.

**KADEAN CONSTRUCTION COMPANY,** Defendant-Appellant.

Nos. 49497, 50065.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 30, 1986.

Petition for Rehearing and/or Transfer Denied Nov. 4, 1986.

Application to Transfer Denied Dec. 16, 1986.

John L. Sullivan, St. Louis, for defendant-appellant.

Terry Leukenhoff, St. Louis, for plaintiffs-respondents.

KAROHL, Presiding Judge.

Defendant appeals judgment after two jury verdicts for plaintiffs, who claimed damages resulting from breach of contract and of warranty connected with defendant's performance of its contract with plaintiffs to construct their home. The first jury trial resulted in a verdict for plaintiff buyers. Defendant's motion for new trial on the issue of damages was sustained and a second trial on that issue was held. The jury returned a verdict for plaintiffs of $32,220. We affirm.

Plaintiffs George and Patricia Kaiser sought to purchase a lot and home to be constructed by defendant-seller Kadean Construction Company, Inc. The Kaisers met with defendant's agent Thomas Breidenbach in February 1978, who directed them to the last two remaining lots in the Meadowlight Subdivision owned by Kadean. Both lots were level at the front but sloped steeply to the rear. This steep slope troubled the Kaisers but Breidenbach assured them that Kadean would put in landfill to create a rolling slope behind the house upon which the Kaisers could cut their grass without difficulty. Thus reassured, the Kaisers purchased their lot on April 1, 1978. Construction began and the Kaisers closed on September 20, 1978. Closing occurred before the promised landfill was completed. They moved in shortly thereafter.

Both plaintiffs testified that they would not have purchased the house without the assurance that they could have a gently rolling backyard. Breidenbach recalled that the Kaisers had expressed concern to him regarding the lot's steep slope, but stated that it would not have been possible to create the promised gentle sloping lot.

There was a gas line easement running along the back of the Kaiser's lot which exacerbated the situation because fill could not be put on top of it. Mr. Kaiser was informed before sale that easements existed but was not aware that they could not be encumbered with fill dirt. Thus, when the Kaisers looked at their lot, they mistakenly included the easement area into the estimated lot size they thought was available to be filled and graded.

Mr. Kaiser had agreed to standard grading and seeding, which had not been completed when the Kaisers moved into their new home. Kadean cited weather conditions as cause for the delay and promised to grade the land the following spring. The Kaisers agreed to a delay in grading. After they moved in, they saw the condition of the rear slope deteriorate as dirt fell away from the back porch piers and from underneath the house. Mr. Kaiser became concerned about the stability of the house after he saw what he termed a "crack" in a support pier. Kaisers' claimed damages for diminished value and consequential damages to the house because of the absence of support for the foundation from promised fill dirt. The former could not be repaired. The later was subject to correction for the purpose of protecting the house.

In March 1979, defendant Kadean graded the front and sides of the lot to the Kaisers' satisfaction. Kadean also graded the back yard fairly flat for ten to twelve feet from the back patio, but graded a steep drop for the remaining yard. Kadean graded the hill by raking dirt down it and then Mr. Kaiser put sod down.

The first grading attempt failed as the hill began to slip and cracks, running across the hill, began to emerge. Kadean returned three or four times and attempted to repair the problems. After defendant's efforts to staunch the slipping hill failed, the Kaisers contacted a soil engineer who made some recommendations. The engineer charged the Kaisers $220. Mr. Kaiser followed these recommendations. He had three walls of railroad ties constructed down the hill to create three plateaus approximately ten feet wide with a five to six foot drop between each section. The walls cost the Kaisers $12,000. Since they were constructed, the Kaisers have noted no further problems with slope movement.

Mr. and Mrs. Kaiser believe the tie walls were necessary to protect the house and this element of damage was separate from the decreased value of the property. Mr. Kaiser estimated the decrease as between $10,000 to $20,000. He based his estimate on the fact that the tie walls need continued maintenance as they rot and their configuration creates a safety hazard for children, to which their four bedroom house is otherwise suited.

Defendant appeals the jury verdict and judgment for plaintiffs, claiming error in both trials. In the first trial the court erred: (1) by giving Instruction 8 (MAI 26.06) to the jury because there was no pleading or evidence presented that defendant Kadean failed to construct the residence in a workmanlike manner; and (2) as a matter of plain error gave Instruction 9 (MAI 25.07) which was unintelligible to the jury because it required the jury to find the "residence" was to be graded as opposed to the back yard. In the second trial the court erred in two respects: (1) by giving Instruction 5 (MAI 4.02) because the proper measure of damages should have been limited to repair costs instead of diminished value and the jury should have had "loss of use" damages defined separately for them; and (2) there was no competent evidence on damages as to any diminished value between the present fair market value of the residence and any fair market value of the residence had it been graded as promised. We address defendant's contentions in order.

■ Defendant has failed to preserve for review its first contention because the challenged instruction is not set forth in its brief as required by Rule 84.04(e). *Dover v. Stanley,* 652 S.W.2d 258, 264 (Mo.App. 1983). The omission was noted in respondents' brief and not cured. We consider the point abandoned.

■ Defendant next asks that we review the submission of Instruction 9 (MAI 25.07) for plain error under Rule 84.13(c), contending that the instruction is confusing and so has caused manifest injustice by requiring the jury to find, *inter alia,* that defendant had represented that plaintiffs' *residence* would be graded instead of finding that the *lot* would be graded.

We do not agree. Defendant has not met its heavy burden of showing that the ambiguous instruction caused such passion or prejudice as to cause "manifest injustice or a miscarriage of justice." Rule 84.13(c); *Sterling v. Thomas,* 657 S.W.2d 57, 58–59 (Mo.App.1983). To the contrary, the record and jury verdict demonstrate the jury's understanding of the obvious circumstances that only the land surrounding the house was to be graded and not the residence itself. The instruction is clearly sufficient to withstand a claim of plain error. *See Executive Jet Management & Pilot Service, Inc. v. Scott,* 629 S.W.2d 598, 608 (Mo.App.1981) and *Wims v. Bi-State Development Agency,* 484 S.W.2d 323, 325–326 (Mo. banc 1972).

■ In its third point, defendant asserts that Instruction 5 (MAI 4.02 and 16.02) given in the re-trial was erroneously given to the jury for two reasons. First, the instruction measured damages by the diminished fair market value instead of by repair costs as sought by defendant. Second, the defendant argues that the instruction provides the jury with too much freedom to grant damages for "loss of use" because these terms are not separately defined nor is any standard provided for their use. Defendant does not claim MAI 4.02 was the wrong pattern.

Defendant's claims of error on this point were not raised before the trial court. We may review only for plain error to determine whether the instruction on damages, if erroneous, allowed a result which was manifestly unjust. Rule 84.13. We find the instruction did not materially affect the merits of the action.

■ The evidence supports a finding that the property was worth twenty thousand dollars less than as represented at the time of closing on the purchase and that plaintiff spent twelve thousand two hundred twenty dollars to protect the property from damages caused by erosion of supporting dirt on a steep slope against the back of the house. The verdict and judgment was responsive to this evidence. Plaintiffs claimed both diminished value from a condition that could not be repaired and consequential damages for a subsequent development which was repairable and was repaired. Defendant's assertion that only the costs of repair would properly measure the damages is incorrect because part of the damages were irreparable. Where injury to real property is extensive or permanent, not easily [or fully] remedied by repair, the damages are measured by diminished property value. *Smith v. Norman,* 586 S.W.2d 84, 85 (Mo.App.1979). Nor did the court error in not defining "loss of use". MAI 4.02 and notes on use for that instruction do not require or provide for a definition of this term. The words are sufficiently clear to a jury of laymen and the record does not show any hint that this jury was mislead or confused. *Executive Jet Management & Pilot Service Inc.,* 629 S.W.2d at 608; *Essex v. Getty Oil Co.,* 661 S.W.2d 544, 558 (Mo.App. 1983). Further, defendant does not claim, and the facts refute, a double recovery. As a matter of plain error and on the facts of this case, we reject a claim that it was error to submit the damage instruction on the basis of diminished fair market value or not to define "loss of use".

■ Defendant asserts in its final point that in the second trial there was no competent evidence as to any diminution in fair

market value of the property. Defendant is not correct. Mr. Kaiser testified without objection that the failure to slope the backyard as promised diminished the value at the time of purchase by $20,000 and that resulting damages required an expenditure of $12,220. Mr. Kaiser, as homeowner, is competent to establish the diminished value of his home. *Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d 851, 854 (Mo.App. 1978).

The judgment is affirmed.

SIMON and GARY M. GAERTNER, JJ., concur.