Eric J. SCHULZE and Wilma J. Schulze, Plaintiffs–Respondents,

v.

C & H BUILDERS, Hayco Builders, Inc., and Community Savings Service Corporation, Defendants–Appellants.

No. 53293.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 8, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 1988.

Richard Scott Bender, Edward Joseph Griesedieck, Clayton, for defendants-appellants.

Joe Bill Carter, Kirkwood, for plaintiffs-respondents.

DOWD, Presiding Judge.

Defendants, builders and sellers of a residential home, appeal the jury verdict in plaintiffs' action for breach of an implied warranty of habitability. We affirm.

Hayco Builders, Inc. and Community Savings Service Corporation formed a joint venture known as C & H Builders for the purpose of developing and selling units in a residential subdivision in Saint Charles, Missouri. In 1983, these three entities (hereinafter defendants) sold one home in this subdivision to Eric and Wilma Schulze (hereinafter plaintiffs) for $71,165.00. The parties closed on the property on May 20, 1983. Prior to closing, plaintiffs inspected

the home and lot and found them satisfactory.

Soon afterwards, plaintiffs noticed hairline cracks forming in the garage and basement floors and they made a note of this condition during the 30 day walk-through with defendants' agent. Subsequently, the cracks increased in size and frequency. Defendants refused to repair the problems, stating that the cracks were caused by the expansive nature of the soil, not by bad workmanship, and that the cracks were not severe enough to be considered structural defects. If the cracks deteriorated below defendants' standards, however, they would effect repairs.

On April 4, 1985, plaintiffs filed a petition for breach of warranty, stating that defendants impliedly warranted that the house "was constructed in a skillful and workmanlike manner and was free from defects in workmanship and materials" but that the residence was not in fact fit for the purposes for which it was purchased.

Plaintiffs only presented two witnesses: Eric Schulze and Dennis Hayden. Mr. Hayden, the executive vice president of C & H Builders, testified that St. Charles County tends to have highly plastic soil. Because this condition produces a moisture problem, it causes cracks such as plaintiffs experienced. A builder may compensate for the plasticity by removing the "plastic" material, mixing lime with the soil, or building a drainage system. In this case, defendants only built a drainage system and did not treat the soil.

Mr. Hayden also testified that the cracks themselves were not unusual. The width and height of the cracks did not violate company standards, which were based on the Homeowner's Warranty Program developed by the Department of Housing and Urban Development. The frequency of the cracks followed a normal pattern. Mr. Hayden felt that the cracks would not be a problem unless they exceeded ¼ inch in width or occurred with a frequency of more than one every twelve feet and that plaintiffs' cracks did not exceed these dimensions.

Mr. Schulze testified that some of the cracks were wider than ¼ inch, that they occurred with a much greater frequency than one every twelve feet, that they were beginning to shift vertically, and that the condition had not stabilized. Although the basement had not flooded, he found evidence of water leakage around the cracks. Mr. Schulze attempted, but was unable, to obtain a bid for fixing the floor which would include a guarantee that the problem would not re-occur. He worried that the condition would affect his ability to sell the home and opined that the market value of the house declined $25,000 as a result of the problem. At the end of plaintiffs' evidence, defendants moved for a directed verdict which the judge denied.

Defendants recalled Mr. Hayden to the stand where he identified one method of repair, filling the cracks with epoxy, which would cost about $650, and a second method, treating the soil with lime then repouring the floors, which would cost $3,500. He reinforced his previous description of the cracks and tendered the opinion that they would not change further. Defendants also presented an expert who identified the fair market value of the house at the time of sale considering the defects as $67,500, resulting in a loss of $3,500. Defendants then renewed their motion for a directed verdict which the court again denied.

The jury returned a verdict for plaintiffs and set damages at $25,000. Defendants requested a judgment notwithstanding the verdict, but the trial court denied the motion. Now defendants appeal in four counts, challenging the verdict and the judge's rulings.

■ Defendants first claim that the trial court erred in denying their motion for a directed verdict at the close of plaintiffs' case because the sales contract specifically waived any implied warranty of habitability. The sales contract provided that:

To the extent permitted by law seller disclaims all warranties expressed or implied (excepting those express warranties, if any, set forth in the contract) ... including, but not limited to, habitability,

merchantability and fitness of purpose, whether express or implied, arising by operation of law, course of dealing, custom and practice or otherwise. The purchaser represents that the purchaser has read and understood the seller's disclaimer of warranties and that purchaser understands and agrees as an inducement to seller to enter into this contract and accepting the benefits thereof purchaser has knowingly and willingly relinquished and waived all warranties, expressed and implied, or otherwise excepting those express warranties, if any, set forth in the contract.

With the sales contract, plaintiffs received a one year certificate of limited warranty, which read in part:

NO OTHER WARRANTIES—This Limited Warranty is the only express warranty we give. Implied warranties, including but not limited to warranties or [sic] merchantability, fitness for a particular purpose, and habitability are limited to the warranty periods set forth above.

In *Smith v. Old Warson Development Company*, 479 S.W.2d 795 (Mo. banc 1972), Missouri adopted the theory that the purchaser of a new home receives an implied warranty from the seller that the home is reasonably fit for its intended use. The theory stems from the fact that "[t]he ordinary 'consumer' can determine little about the soundness of the construction but must rely upon the fact that the vendor-builder holds the structure out to the public as fit for use as a residence, and of being of reasonable quality." *Id.* at 799. A buyer and seller may bargain to avoid this implied warranty, but "the burden of demonstrating the *fact* of such a bargain ... remains great." *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo. banc 1978). To prove a waiver, the seller must "show a conspic-

uous provision which fully discloses the consequences of its inclusion" and demonstrate that this agreement was "in fact" reached; however "[a] knowing waiver of this protection will not be readily implied." *Id.* at 881, n. 4. The disclaimer clause itself is competent evidence to support such a claim. *Tassan v. United Development Co.*, 88 Ill.App.3d 581, 43 Ill.Dec. 769, 776, 410 N.E.2d 902, 909 (1980).

In this case, there was no clear proof of a knowing waiver. The disclaimer provision and the limited warranty provision conflicted: one stated that all implied warranties were waived and the other indicated that the provisions applied for one year. Because of this ambiguity, we cannot hold that defendants met their burden of proving that plaintiffs agreed to the waiver. Plaintiffs could not knowingly accept an agreement whose terms were unclear. When reviewing the denial of a directed verdict, we examine the evidence in the light most favorable to the non-moving party to see if there was a submissible case. *Fricke v. Valley Production Credit Ass'n*, 721 S.W.2d 747, 752 (Mo.App.1986). We find no error in the court's ruling here.[1]

Defendants next argue that the jury's verdict was against the weight of the evidence because plaintiffs did not submit any evidence that the cracks constituted a latent structural defect. Because the cracks only affected the floors, not structures such as the walls, foundation, furnace or duct work, defendants contend this is merely a cosmetic defect.

The implied warranty will only apply to latent structural defects. *Smith v. Old Warson Development Company*, 479 S.W.2d at 799. This court has interpreted this term to apply to defects in items which are "an integral part of the structure *or*

---

**1.** Although the case was submitted on the theory of implied warranty, we note that the express warranty may also have applied to the defects. The express warranty purports to guarantee "the floors, ceilings, walls and other structural components of the home" from "defects in materials or workmanship." Defendants claim these defects fall under an express exclusion, but we disagree. That term relieves defendants of responsibility for defects "which are the result of

characteristics common to the materials used, such as (but not limited to) settling of ground in yard; cracks due to drying, shrinkage, and curing of concrete and masonry." The defects in question do involve cracks in concrete, but the cracks are caused by a soil condition which defendant did not effectively compensate for; they are *not* caused by the normal "drying, shrinkage, and curing" of the concrete.

immediately supports it." *San Luis Trails Ass'n v. E.M. Harris Bldg.*, 706 S.W.2d 65, 69 (Mo.App.1986) (emphasis added). This indicates that an improvement may be structural even if it does not support the house but is necessary to its use. We believe that the basement and garage floors fall into this category. While these items are not part of the weight-bearing structure of the house, it would be uninhabitable without them.

■ The real issue was whether the cracks were so severe as to render the floor unreasonably unfit, and that was a fact issue for the jury. *Smith v. Old Warson*, 479 S.W.2d at 800. Testimony and photographs depicting the cracks were before the jury. There was sufficient evidence for them to conclude that the cracks were so severe as to render an integral part of the home unfit, thus violating the implied warranty.[2] The trial court denied defendants' motion for a J.N.O.V. which claimed the verdict was against the weight of the evidence. We cannot disturb this decision. *Reed Datsun Inc. v. Gen. Acc. Fire & Life Ins.*, 740 S.W.2d 381, 383 (Mo. App.1987). Point denied.

Defendants again challenge the trial court's denial of the motion for a directed verdict at the close of plaintiffs' case on the grounds that plaintiffs failed to introduce sufficient evidence of damages. Although Mr. Schulze testified to a figure of loss of value, defendants claim that: 1) the testimony was incompetent; and 2) plaintiffs were also required to prove cost of repair.

■ The general rule in Missouri is that an owner is presumed competent to testify to the value of his real property even though he does not qualify as an expert. *Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d 851, 854 (Mo.App. 1978). We applied this rule in *Kaiser v. Kadean Const. Co.*, 719 S.W.2d 892 (Mo. App.1986), a case regarding breach of an express warranty by a home builder, and found the plaintiff-homeowner's testimony

competent evidence to establish diminished value. *Id.* at 896. Defendants offer no persuasive reasoning that would distinguish the present case from *Kaiser* and we hold that Mr. Schulze's testimony was competent evidence of diminished value.

■ In implied warranty cases, the general measure of damages is the *lowest* of cost of repair or diminution in value. *Steffens v. Paramount Properties, Inc.*, 667 S.W.2d 725, 728 (Mo.App.1984). In most cases, an implied warranty plaintiff will have to submit evidence of damages under both methods. *Ribando v. Sullivan*, 588 S.W.2d 120, 124 (Mo.App.1979). This standard of damages may vary, however, if the facts of the case require. *Snowden v. Gaynor*, 710 S.W.2d 481, 487 (Mo.App. 1986).

■ Plaintiffs submitted a $25,000 figure under the diminution in value test but did not submit a figure for cost of repair. Plaintiffs' evidence and opening statement, however, disclosed the theory that the defect could not be adequately repaired. Consequently, under plaintiffs' theory of the case, evidence of repair costs was immaterial and the trial court cannot be faulted for failing to direct a verdict because of the lack of such evidence.

■ Under this rational, we also deny defendants' final point which claims the trial judge erred by not granting the J.N.O. V. motion. Defendants argue that the jury clearly failed to follow the damage instruction, MAI 4.02 modified under *Ribando v. Sullivan*, 588 S.W.2d 120 (Mo.App.1979), which required them to award the lesser of cost of repair or diminution in value. Defendants felt that, since they presented a cost of repair figure below the plaintiffs' diminution in value figure, the jury was bound to accept the former.

As indicated above, the jury first had to determine if the identified repair methods would adequately compensate plaintiffs. Defendants argued that the methods were satisfactory; plaintiffs espoused an oppo-

---

**2.** Defendants argue in their reply brief that the question of whether a defect is structural is a matter for expert testimony. This contention is unsupported by authority, however, and we are unable to find any authority indicating that expert testimony is necessary.

site view. The jury was free to believe or disbelieve either testimony and we cannot second guess their decision on appeal. *Wilkes v. Group Underwriters Mut.*, 715 S.W.2d 308, 310 (Mo.App.1986). Apparently, the jury felt that the repair methods were insufficient. Thus, the cost of repair figures did not enter into their deliberations under the damage instruction. The verdict does not demonstrate an improper consideration of the damage instruction.

The jury's verdict is affirmed on all counts.

SIMON, J., and SIMEONE, Senior Judge, concur.