James **CRAWFORD**, et al.,
Plaintiffs–Respondents,

v.

**WHITTAKER CONSTRUCTION, INC.,**
et al., Defendants–Appellants.

No. 54549.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 9, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 7, 1989.

Application to Transfer Denied
Aug. 1, 1989.

Joseph H. Guffey, Alene V. Haskell, Mark G. Arnold, and Elizabeth Anderson, St. Louis, for defendants-appellants.

Robert E. Morley, O'Fallon, for plaintiffs-respondents.

CARL R. GAERTNER, Judge.

Plaintiffs, James and Norma Crawford, purchased a newly constructed home from defendant Whittaker Construction, Inc. Soon after plaintiffs occupied the house certain defects appeared. When efforts by defendants to correct some of these defects were unsatisfactory to plaintiffs, they instituted this action against Whittaker Construction, Inc., its president, and a salesman-employee, seeking to recover $7,500 as the diminution of value of the home on the theory of a breach of the implied warranty of habitability or fitness.[1] After a jury-waived trial the court entered judgment in favor of plaintiffs and against all defendants in the sum of $7,500. Defendants appeal. We affirm in part and reverse in part.

Plaintiffs alleged three specific defects as the cause of the reduced value of their home;

(A) The lot was improperly filled and graded causing the yard and driveway to sink, crack and become useless;

(B) The concrete stoop was improperly poured and finished causing it to become unsightly;

(C) The kitchen counter top was defective by reason of holes and nicks located therein.

The evidence established the existence of three chips in the surface of the kitchen counter top and that the defendants' attempt to fill these chips with epoxy did not last more than two weeks. A chip in the concrete surface of the front stoop was filled by defendant but remained discolored and unsightly. The major problem related to the sinking of the ground under the driveway and in various areas of the front yard. Defendants replaced two slabs of the driveway but these and two other slabs also sank leaving cracks in the concrete and misalignment 1½ inches deep between slabs. Plaintiffs' expert testified it was only a matter of time before the driveway collapsed. Two troughs appeared in the front lawn, varying in depth between 12 and 18 inches. A hole developed near a flower bed 18 inches deep and 44 inches wide. Plaintiffs' expert testified that these depressions resulted from the failure of the plumbing subcontractor to properly backfill the trenches excavated for sewer pipes. He testified that when the dirt was re-

---

1. In a second count plaintiffs sought actual and punitive damages based upon alleged fraudulent concealment of defendants' intent not to honor implied warranties. This count was dismissed by the trial court at the close of plaintiffs' evidence. No appeal has been taken from the dismissal of this count.

placed over the pipes it was not tamped or compacted with sufficient densification to prevent settling and that further settling would continue for several more years.

Plaintiff James Crawford expressed his opinion that the value of his home was diminished in the sum of $7,500 because of these defects. Plaintiffs' introduced no evidence relating to the cost of repairs. Defendants' evidence was that the counter top chips could be repaired for $25, the concrete stoop replaced for $100, and the driveway could be supported by "mud-jacking" at a cost of $700.

An implied warranty of habitability in favor of the purchaser of a newly constructed home was first enunciated in Missouri in the case of *Smith v. Old Warson Development Company*, 479 S.W.2d 795 (Mo.banc 1972). The significance of the *Old Warson* decision was described as "its extension of the warranty [of merchantability] by analogy to the sale of a completed new home." *O'Dell v. Custom Builders Corp.*, 560 S.W.2d 862, 870 (Mo.banc 1978). The warranty thus requires that the newly constructed residence be reasonably fit for the ordinary purposes for which it is used. *Id.*

■ On appeal defendants first contend plaintiffs failed to make a submissible case on a theory of breach of implied warranty because of an express disclaimer of all implied warranties in the sale contract. This contention is predicated upon the following provisions which appear on the face of the sale contract signed by plaintiffs.

HOME OWNERS WARRANTY COVERAGE: Seller participates in the Home Owners Warranty Program. Seller will provide Purchasers with a written warranty in the form of a home warranty/limited warranty as prescribed by the Home Owners Warranty Corporation (HOW). The warranty provided through HOW includes a limited warranty for the first two years by the Seller, backed by HOW, and eight (8) additional years of insured protection against major structural defects, as defined in the home warranty documents. The terms of the home warranty/limited warranty are in-

corporated by reference in this Sale Contract, and are a part of its terms. Seller makes no warranties or other representations concerning the residence sold hereunder, other than as expressly set forth in the terms of the home warranty/limited warranty incorporated herein. Any other representations, are unauthorized and are not binding upon Seller. ALL OTHER WARRANTIES WITH RESPECT TO THE RESIDENCE SOLD HEREUNDER ARE HEREBY DISCLAIMED, TO THE EXTENT PERMITTED BY LAW, WHETHER IMPLIED OR ARISING BY OPERATION OF LAW, COURSE OF DEALING, CUSTOM AND PRACTICE, OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, HABITABILITY, MERCHANTABILITY, AND FITNESS FOR PURPOSE. PURCHASERS REPRESENT THAT PURCHASERS HAVE READ AND UNDERSTOOD THIS PROVISION, AND THAT PURCHASERS UNDERSTAND AND AGREE THAT, BY ENTERING INTO THIS CONTRACT AND ACCEPTING THE BENEFITS OF THE HOME WARRANTY/LIMITED WARRANTY INCORPORATED HEREIN, PURCHASERS HAVE KNOWINGLY RELINQUISHED ANY AND ALL OTHER WARRANTIES OF ANY KIND OR NATURE.

The Home Warranty/Limited Warranty (hereafter the HOW warranty) referred to is a 22 page document which in some respects adds to the implied warranty rights of a purchaser and in other respects severely limits such rights. Particularly significant to this case are the exclusion in the HOW warranty of driveway defects and the limitation of the builder's responsibility of repairing ground settlement to a single fill of settled areas during the first year while the owner remains responsible for replacement of sod, shrubs and other landscaping.

An issue regarding a possible disclaimer of the implied warranties was touched upon in *Old Warson*, but not established under the facts of that case. 479 S.W.2d at 800. In *Crowder v. Vandendeale*, 564 S.W.2d

879, 881 (Mo.banc 1978) the question of disclaimer or modification of implied warranties was directly addressed. The Supreme Court concluded that although the parties have a right to make their own bargain as to economic risk, the burden of proving the fact of a bargain intended to vary implied warranty terms was great.

> As indicated by analysis in *Old Warson*, one seeking the benefit of such a disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was *in fact* the agreement reached. The heavy burden thus placed upon the builder is completely justified, for by his assertion of the disclaimer he is seeking to show that the buyer has relinquished protection afforded him by public policy. A knowing waiver of this protection will not be readily implied. (emphasis in original) *Crowder*, 564 S.W.2d at 881, n.4.

The Crowder court added that for the purpose of demonstrating the *fact* of a bargain to vary implied warranty terms "boilerplate clauses, however worded, are rendered ineffective...." Id. at 881.

With these admonitions in mind, we look to the record for evidence in support of defendants' burden of proving the substitution of the express HOW warranty for the implied warranties was *in fact* a bargained agreement between the parties. Other than the boilerplate clause set forth above, which *Crowder* tells us is ineffective for this purpose, we find no such evidence. The word "bargain", as a noun is defined as "a discussion of terms of an agreement" and, as a verb, as "to negotiate over the terms of an agreement or contract." *Webster's Third New International Dictionary, Unabridged, 1981.* The record is devoid of any evidence regarding a discussion or negotiation of terms regarding warranties. James Crawford was not questioned regarding the sales contract and defendant Kelly Flatley, the agent who apparently negotiated the terms of the sales contract with plaintiffs, did not testify. In their briefs plaintiffs state that they were not given the 22–page HOW warranty before the execution of the sales contract.

This affirmation is neither supported nor refuted by the record and we therefore disregard it. This provides no solace for defendants, however, since it is their burden to establish the fact of a bargained agreement. The silence of the record regarding when, if ever, the 22–page document was given to plaintiffs is just as damning to defendants as if the evidence supported plaintiffs claim. The absence of evidence that plaintiffs knew what they were receiving in return for what they were giving up unerringly illustrates the failure to prove that plaintiffs knowingly relinquished the protections afforded them by public policy. The teaching of *Crowder* is clear: One asserting a disclaimer of the warranties implied by public policy in a new home purchase must establish that such protections were *knowingly* relinquished as a result of a bargain *in fact*, i.e. an agreement reached through discussion and negotiation, and boilerplate clauses in a form contract alone do not establish these requirements. Defendants first point on appeal is denied.

■ Defendants second point charges trial court error in awarding plaintiffs' damages in the amount of $7,500 because, defendants argue, the proper measure of damages is the cost of repairs, $825. Defendants accurately state the general rule that the proper measure of damages in this situation is "whichever is lower, as between the cost of repair and the diminution of value (diminution meaning the difference in value of the house if it had been constructed properly compared with its actual value as constructed.)" *Ribando v. Sullivan*, 588 S.W.2d 120, 124 (Mo.App. 1979). The rationale underlying this rule is that plaintiffs are entitled to recover as damages only a sum which is equivalent to performance of the bargain—to be placed in the position they would have been in if the contract had been fulfilled in a workmanlike manner. *Steffens v. Paramount Properties, Inc.*, 667 S.W.2d 725, 727–28 (Mo.App.1984).

Defendants argue that the court erred in accepting plaintiffs' James Crawford's opinion that the defects caused a diminu-

tion in value of his home in the amount of $7,500 because defendants evidence of repair cost in the sum of $825 dollars is uncontradicted. For several reasons we find no merit in this argument.

In Missouri the courts have traditionally indulged in the concept that a home owner is qualified to express an opinion upon the diminution in value in his property. Such an expression of opinion is admissible and of probative value. *Esmar v. Zurich Ins. Co.*, 485 S.W.2d 417, 424 (Mo.1972); *Kaiser v. Kadean Const. Co.*, 719 S.W.2d 892, 896 (Mo.App.1986). The weight and value given to such opinion, of course, is left to the discretion of the fact-finder. Thus, the trial court's assessment of damages has evidentiary support.

The trial court was not bound to accept defendants' evidence of repair cost because, among other reasons, this evidence did not establish that all of the defective conditions could be repaired for the $825 amount suggested by defendants' evidence. The sums comprising this amount, supplied by defendants' manager of cost estimating, included $700 for "mud-jacking" under the concrete driveway slabs, $100 for replacing the chipped concrete stoop, and $25 for re-epoxying the counter top chips. The evidence was undisputed that the last item was merely a repetition of a remedy which has totally failed once before. Plaintiffs' evidence was that "mud-jacking" would not successfully remedy the driveway problem because of continued subsidence and because the cracks in the concrete would remain. Nothing is included in defendants' $825 figure for repairing the trenches and holes in the lawn and gardens. The fact-finder is free to reject evidence regarding the cost of repairs which fails to establish that the proposed repairs would fully and completely restore the property. *Nelson v. Missouri Hghwy, & Trans. Comm'n*, 734 S.W.2d 521, 523–34 (Mo.App.1987). Moreover, where there is contradictory testimony regarding the adequacy of proposed repairs to satisfactorily remedy the defects, the fact-finder may accept either opinion and we may not second guess this decision on appeal. *Schulze v. C & H Builders*, 761 S.W.2d 219, 223–24 (Mo.App.1988).

Finally, we agree with defendants' contention that the trial court erred in entering judgment against the individual defendants, Robert Whittaker, the president of the defendant corporation and Kelly Flatley, its sales agent. Count II of plaintiffs' petition seeking recovery against all three defendants for alleged fraud was dismissed. Count I, on which plaintiffs were successful, sought damages based upon breach of the implied warranty of habitability, a contract action. *Crowder v. Vandendeale*, 564 S.W.2d at 881. No contractual relationship existed between plaintiffs and the individual defendants, agents of a disclosed principal.

Accordingly, the judgment in favor of plaintiffs and against defendant Whittaker Construction, Inc., is affirmed. The judgment in favor of plaintiffs and against defendants Robert Whittaker and Kelly Flatley is reversed.

PUDLOWSKI, C.J., and SIMEONE, J., concur.