Frank J. SMITH and Catherine M. Smith,
Appellants,

v.

OLD WARSON DEVELOPMENT COM-
PANY, a Corporation, Respondent.

No. 57020.

Supreme Court of Missouri,
En Banc.

May 8, 1972.

John F. Nangle, Clayton, for appellants.

Ludwig Mayer, Clayton, for respondent.

MORGAN, Judge.

We accepted transfer of this cause after the filing of an opinion by the Court of Appeals, St. Louis District, because the result reached therein evidenced a departure, although limited, from a strict application of the doctrine of caveat emptor. The court's reasoning was expressed in an opinion by Smith, J., which was as follows:

"This appeal presents squarely the question of whether implied warranties of merchantable quality and fitness exist in the purchase of a new home by the first purchaser from a vendor-builder. We hold such warranties do exist.

"Plaintiffs received a verdict of $6,800 from the jury but the court sustained defendant's motion for judgment in accordance with its motion for directed verdict. The court made no ruling on defendant's motion for new trial.

"Defendant was the owner of a tract of land in St. Louis County which it subdivided for sale as residential lots. Certain improvements of the tract were made such as installation of streets and utilities, but it was the plan of defendant to sell the land without homes thereon, and let the buyers construct or have constructed their homes. In order to demonstrate to the public the type of luxury home which could be built on the lots defendant hired a Mr. R. J. Munzlinger to 'act as agent' for defendant in the construction of a house at 'twenty-two Waterbury Drive, Forest Green Estates, Ladue, Mo.' For his 'duties as agent' Munzlinger was to receive a fixed fee. Munzlinger constructed the display home which was thereafter sold by defendant to the plaintiffs. At the time of building the house it was defendant's intention to sell it after using it for publicity purposes. The house was completed in February 1963, and on February 23, 1963, plaintiffs and defendant entered into a sale contract calling for a purchase price of $82,500. The sale contract contained the following provision: 'Property to be accepted in its present condition unless otherwise stated in contract. Seller warrants that he has not received any written notification from any governmental agency requiring any repairs, replacements, or alterations to said premises which have not been satisfactorily made. This is the entire contract and neither party shall be bound by representation as to value or otherwise unless set forth in contract.'

"There were no special agreements in the contract, which was a standard form contract adopted by the Real Estate Board of Metropolitan St. Louis. The contract as printed contained the name and address of defendant's sales agent. There is some dispute in the testimony as to whether the house was completed at the time the contract was signed. We find it unnecessary to resolve such conflict. On March 15, 1963, defendant conveyed the property by general warranty deed to plaintiffs, who shortly thereafter moved in.

"Within a few months plaintiffs noticed that the doors in a section of the house containing a bedroom and bathroom were sticking. Soon they noticed the caulked space between the bathtub and wall was enlarged. Eventually a space developed between the baseboard and the floor, and cracks developed in the wall. All problems were limited to the two rooms, which were constructed on a four-inch concrete slab, completely surrounded by but not attached to, foundation walls. The remainder of the house rested on a foundation and as stated experienced no difficulties. All further discussion refers only to the two room complex.

"There is no dispute that the slab settled or sank resulting in the problems experienced. There was evidence that by trial time in September 1969, the settling (which was not even throughout the two rooms) had reached in one location an inch and three quarters. Some basic attempts to repair the visible problems were made by the builder but there was no attempt to correct the cause of the problems—the settling of the slab. The evidence warranted the conclusion that the settling was beyond the normal that might be expected in a new house.

"Plaintiffs adduced testimony from an engineer that some additional settling was a possibility and that the settling of the slab was the result of improper and unworkmanlike compaction of the soil under the slab. He estimated that proper correction of the problem would cost approximately $6000. A real estate appraiser testified that in his opinion the house and lot without the defect had a fair market value in 1963 of $82,500 and with the defect had a fair market value in 1963 of $69,000 or a difference of $13,500. He opined that

even if the problem were fully corrected the reputation of the house as a sound property would still be impaired reducing its market value. Since we review the trial court's action taking the evidence most favorable to plaintiffs, we need not review defendant's evidence. We do note that that evidence did not dispute the fact of the slab settling.

"Although plaintiffs' amended petition was in two counts, implied warranty and negligence, their submission to the jury was under implied warranty only. Defendant contends that no implied warranty exists in the sale of real estate and that if it does the above quoted portion of the sale contract expressly excludes such warranty here.

"As stated in Keener v. Dayton Electric Manufacturing Company, Mo. (1969), 445 S.W.2d 362, 1. c. 364, 'The law involving products liability has undergone dramatic change in recent years. * * *' In that case our Supreme Court adopted the rule of strict liability in tort stated in 2 Restatement, Law of Torts, Second, § 402A pertaining to sellers of any product in a defective condition. The reason for adopting such rule was ' " * * * to insure that the costs of injuries resulting from defective products are borne by the manufacturers [and sellers] that put such products on the market rather than by the injured persons who are powerless to protect themselves. * * *"'

"The court also recognized that the difference between 'strict liability' or 'implied warranty' would not in this state be one of substance ' " * * * since our courts are clearly recognizing the tort nature of the liability imposed. * * *"'

"In Morrow v. Caloric Appliance Corporation, Mo., en banc, (1963), 372 S.W.2d 41, the Supreme Court in eliminating the requirement of privity in an implied warranty case rested its decision upon the following grounds: 'Careful consideration of the recent decisions of the courts of other states to the same effect, the inclination

of the courts of this state to modify the harsh results flowing from a rule of *caveat emptor* in analogous fact situations, the logic of the reasoning upon which these cases (and numerous other cases therein cited) are ruled in an effort to afford justice to the vast majority of the "consumer" citizenry, whose well-being, health and very lives are dependent in great degree upon processed food and manufactured articles and facilities, the fitness or safe use of which the ordinary "consumer" can know little or nothing other than the fact that the processor or manufacturer holds them out to the public as fit and reasonably safe for use by the "consumer" when used in the manner and for the purpose for which they are manufactured and sold, lead inevitably to the conclusion that under the facts as found by the jury the appellant is to be held liable as an implied warrantor of the fitness and reasonable safety of the gas cooking range here involved, despite lack of privity of contract.' [1. c. 55].

"Our Supreme Court has further recognized that implied warranties of merchantable quality and reasonable fitness for use are derived from the common law. Hays v. Western Auto Supply Co., Mo. (1966), 405 S.W.2d 877 [4, 5]. In addition to the use of the theory of implied warranty to recover for personal injuries or property damage, the doctrine has also been successfully utilized to recover the difference between the value of the product as warranted and its actual value. See Dubinsky v. Lindburg Cadillac Co., Mo.App., 250 S.W.2d 830; Mullins v. Sam Scism Motors, Inc., Mo.App., 331 S.W.2d 185; and Miller v. Andy Burger Motors, Inc., Mo.App., 370 S.W.2d 654. Negligence, knowledge or fault of the vendor or manufacturer is not required where recovery is sought for a defective condition under either implied warranty or strict liability. Keener v. Dayton Electric Manufacturing Company, *supra*; Williams v. Ford Motor Company, Mo.App., 411 S.W.2d 443. Of course, an implied warranty of merchantable quality or fitness for use (often used

interchangeably by the courts) does not require a perfect product, only one of reasonable quality or reasonable fitness. Paton v. Buick Motor Divisions, General Motors Corp., Mo., 401 S.W.2d 446; Mullins v. Sam Scism Motors, Inc., *supra.*

■ "Having in mind the reasons given by our Supreme Court for its decisions in *Keener* and *Morrow,* we cannot see any logical reason for not imposing a similar liability on the facts before us. Although considered to be a 'real estate' transaction because the ownership to land is transferred, the purchase of a residence is in most cases the purchase of a manufactured product—the house. The land involved is seldom the prime element in such a purchase, certainly not in the urban areas of the state. The structural quality of a house, by its very nature, is nearly impossible to determine by inspection after the house is built, since many of the most important elements of its construction are hidden from view. The ordinary 'consumer' can determine little about the soundness of the construction but must rely upon the fact that the vendor-builder holds the structure out to the public as fit for use as a residence, and of being of reasonable quality. Certainly in the case here no determination of the existence of the defect could have been made without ripping out the slab which settled, and maybe not even then. The home here was new and was purchased from the company which built it for sale. The defect here was clearly latent and not capable of discovery by even a careful inspection. Defendant was the developer of the subdivision in which the house was located, and built this home to

demonstrate to the public the type of quality residence which could be erected in the subdivision.[1] It was held out to the public as 'luxurious' and was shown as a model to the public. Common sense tells us that a purchaser under these circumstances should have at least as much protection as the purchaser of a new car, or a gas stove, or a sump pump, or a ladder.[2]

"Respondent contends that we are forclosed from reaching this result by four prior appellate decisions in this state. The first of these is Combow v. Kansas City Ground Inv. Co., 358 Mo. 934, 218 S.W.2d 539. There plaintiff sued for damages she sustained by being hit by falling plaster in her home which she and her husband had recently purchased from defendant. The house was old and at the time of sale was being remodeled. Plaintiff contended that the defendant orally agreed, prior to the written sale contract, to repair and that he had breached this contract to repair resulting in plaintiff's injuries. The court held that the prior oral statements relied on were merged in the written contract of sale, that under the written contract no duty to repair was undertaken and defendant was not liable. The court expressly said that the suit was not based on warranty. There is dicta in the opinion that in the absence of an express agreement to the contrary a seller of real estate cannot be held liable for defective condition of the premises. Such a statement was unnecessary to the decision of the case and we therefore are not compelled to follow it.

■ "In Gathright v. Pendegraft, Mo., 433 S.W.2d 299, a negligence case, the Supreme Court referred to the *Combow* case

---

1. Defendant also constructed one other house in the subdivision.

2. "We note in this regard the obvious trend throughout the nation to afford home purchasers the protections now afforded purchasers of chattels. We have not discussed at length the various policy arguments to which the courts have referred in abandoning *caveat emptor* as it pertains to new homes. For such dis-

cussions see Wawak v. Stewart, [247] Ark.Sup. [1093], 449 S.W.2d 922; Crawley v. Terhune, Ky.Sup., 437 S.W.2d 743; Weeks v. Slavick Builders, Inc., 24 Mich.App. 621, 180 N.W.2d 503; Waggoner v. Midwestern Development, Inc., 83 S.D.Sup. 67, 154 N.W.2d 803; Humber v. Morton, Tex.Sup., 426 S.W.2d 554; House v. Thornton, Wash.Sup., 76 W.2d 428, 457 P.2d 199; 25 A.L.R.3rd 383 and cases therein cited."

and distinguished it. We cannot consider the court's passing reference to *Combow* as an approval of the dicta in *Combow* discussed above. Whaley v. Milton Const. & Supply Co., Mo.App. (1951), 241 S.W.2d 23, and Flannery v. St. Louis Architectural Iron Co., 194 Mo.App. 555 (1916), 185 S. W. 760, were both cases decided by this Court. In both cases we rejected recovery against a builder, under an implied warranty of fitness, where latent defects existed in materials supplied by a reputable dealer to the builder and where the builder had niether knowledge nor reason to have knowledge of the defects. Although neither case deals with the precise factual situation presented in the case at bar, both cases proceed on the assumption that liability for breach of implied warranty does not lie in the absence of fault or negligence by the warrantor. In view of the cases heretofore mentioned we believe fault or negligence of the warrantor is no longer required for recovery under implied warranty.

■ "We mention briefly a matter not raised by the parties, simply to indicate that we are aware of the doctrine of law involved and have considered it. That is the doctrine of merger of the sale contract into the deed, so that the obligations of the sale contract are extinguished when the deed is delivered. We do not believe such doctrine applies here in view of the declaration of the Supreme Court in *Keener* that in this state implied warranty is a tort concept not a contract right. Plaintiffs' rights arise as a matter of law from their purchase of the house, not from their sale contract or the deed.

■ "The trial court apparently granted defendant's motion for judgment on its determination that the house was of reasonable quality and reasonably fit. On the record before us we conclude that the court erred in so doing. The test is, of course, 'reasonableness' and that is essentially a fact issue for the jury. Plaintiffs presented evidence that the decrease in value of the house because of the defect was $13,500, twenty per cent of the value of the house excluding the land. There was evidence that $6000 would be required to remedy the defect, and there was considerable testimony and photographic evidence of the condition of the premises as a result of the defect. The problems experienced were not normal. There was sufficient evidence to entitle a jury to find a lack of reasonable quality and fitness.

■ "We turn to the 'present condition' provision of the contract, and respondent's contention that that provision excluded any implied warranties. On its face it does not indicate that it has reference to implied warranties. Respondent contends that the language 'Property to be accepted in its present condition unless otherwise stated in contract' is an exclusion of warranties. We cannot so interpret it. The reasonable interpretation of that provision is that vendor assumes no obligation to do any additional work on the house unless specified. Such a provision would preclude purchasers from insisting that the vendor promised to paint the house a different color, or add a room, or retile a bathroom or correct an obvious defect. We do not believe a reasonable person would interpret that provision as an agreement by the purchaser to accept the house with an unknown latent structural defect. See Wawak v. Stewart, [247] Ark.Sup. [1093], 449 S.W. 2d 922 [4, 5].

"We conclude that the court erred in sustaining defendant's motion for judgment in accordance with its motion for directed verdict.

■ "Respondent suggests that in the event we find the court erred in entering judgment that we remand to the trial court so that it might pass on the motion for new trial. The trial court should have ruled the alternative motion for new trial. Civil Rule 72.02, V.A.M.R. In Medical West Building Corp. v. E. L. Zoernig & Co., Mo., 414 S.W.2d 287, the court stated: ' * * * Litigants who elect to take ad-

vantage of the privilege of combining a motion for judgment with an alternative motion for a new trial have an obligation to see that the trial court act, in accordance with Rule 72.02, at the risk of being held to have waived their motion for new trial.' [8].

"In *Zoernig* the cause was remanded in the interests of justice to allow the trial judge to rule on the motion for new trial. We think here it is unnecessary to remand the case. Since the trial and appeal of this litigation the trial judge has died, so action on the motion for new trial cannot be taken by a judge who had the benefit of listening to the testimony and judging its weight. Several of the claimed errors set forth in the motion for new trial have necessarily been passed on by our decision that plaintiffs made a case. Most of the remaining errors claimed deal with the dispute as to whether the 'present condition' provision was waived by defendant. Since we have held that the 'present condition' provision did not exclude the implied warranties, the question of its waiver by defendant is not of consequence. We have carefully examined other errors asserted in the motion for new trial and are not convinced that any prejudicial error was committed which would require a new trial."

We agree with the conclusion of the Court of Appeals that a review of the case law indicates a substantial trend by the courts to abandon the strict rule of caveat emptor in the sale of a new house under the circumstances present in the instant case. Such a trend is not only evidenced by the precedents cited in the opinion quoted but also by many writers on the subject. "Current literature on the subject overwhelmingly supports this idea of an implied warranty of fitness in the sale of new houses. See Property—Implied Warranty of Fitness in the Sale of a New House, 71 W.Va.L.Rev. 87 (1968); The Case of the Unwary Home Buyer: The Housing Merchant Did it, 52 Cornell L.Q. 835 (1967); Caveat Emptor in Sales of Realty—Recent Assaults Upon the Rule, 14 Vand.L.Rev. 541 (1961); The Case For an Implied Warranty of Quality in Sales of Real Property, 53 Geo.L.J. 633 (1965)." House v. Thornton, 76 Wash.2d 428, 457 P.2d 199, 204. From all of which, it has been said that: "The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices." Humber v. Morton, Tex., 426 S.W.2d 554, 562. However, it should be recognized that the rationale for allowing recovery by a purchaser of a new house, on a theory of breach of an implied warranty of habitability or quality, is applicable only against that person who not only had an opportunity to observe but failed to correct a structural defect, which, in turn, became latent, i. e., the builder-vendor. Whether or not such latent defects resulted from the sole activities of the builder-vendor or that of an independent contractor used by him would be immaterial in connection with a complaint of the purchaser. Relaxing the caveat emptor rule in this limited area would not require a builder-vendor to construct a perfect house as the test would be one of reasonableness of quality. In addition, the duration of liability would be premised, also, on a standard of reasonableness. We adopt the reasoning of the Court of Appeals and prior opinions of this court to the contrary should no longer be followed.

The judgment is reversed and the cause remanded with directions to enter judgment in accordance with the jury verdict.

All concur.