**Shirley SCOTT, et al.,**
**Plaintiffs–Appellants,**

v.

**MISSOURI INVESTMENT TRUST, et al., Defendants–Respondents.**

**No. 53288.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 24, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 22, 1988.

Application to Transfer Denied
July 26, 1988.

common area collapsed while Shirley Scott was on it. The collapse occurred because the nails connecting the stairway to the floor above pulled loose. Plaintiffs' expert in his deposition testimony opined that the nails were improperly positioned at the time the stairway was originally constructed in 1968. The collapse occurred in 1982. At the time of original construction, plaster was placed in such a fashion as to conceal the nails and their placement. There is no disagreement that the defect was latent and incapable of being observed without ripping off the plaster.

The first two counts of the petition alleged negligence against all defendants. The first count was for Shirley Scott's injuries; the second was her husband's consortium claim. Count III was based upon strict liability against Heidelbaugh, Campbell and MIT, on the theory that the stairway was defective and dangerous. Count IV sought recovery under an implied warranty theory against the same defendants. Count V was a consortium claim.

It was plaintiffs' contention that MIT was a continuation of the Heidelbaugh/Campbell ownership and that Midvale is managing the apartment for MIT, the actual owner. It is unnecessary for us to resolve the status of Midvale and MIT.

Mark D. Hirschfeld, St. Louis, for plaintiffs-appellants.

John H. Marshall, Clayton, for defendants-respondents.

SMITH, Judge.

Plaintiffs appeal from the orders of the trial court granting defendants' motions to dismiss as to three counts of plaintiffs' five count fifth amended petition and granting defendants' motions for summary judgment as to the remaining counts.

Shirley Scott was a tenant in an apartment house owned by Midvale Associates. George Heidelbaugh and Bruce Campbell were the developers and original owners of the building. Missouri Investment Trust (MIT) acquired the building in 1968 and owned it until Midvale acquired it. The accident occurred when a stairway in a

■ We first deal with the strict liability claim. Plaintiff essentially asks us to extend or apply the strict liability concepts articulated in *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969). That case was based on the rule of strict liability set forth in 2 Restatement, Law of Torts, Second § 402A. The rule is directed toward "products." In *Chubb Group of Insurance Companies v. C.F. Murphy & Associates, Inc.*, 656 S.W.2d 766 (Mo.App.1983) [19–24] the court pointed out that it was apparently not the intention of the framers of the Restatement to include real property within the language of Sec. 402A. We agree. In *Hubbard v. Chicago Housing Authority*, 138 Ill.App.3d 1013, 93 Ill.Dec. 576, 487 N.E.2d 20 (1985) and *Dwyer v. Skyline Apartments, Inc.*, 123 N.J.Super. 48, 301

A.2d 463 (1973) those courts rejected the extension of products liability into the landlord-tenant area. The reasons stated in those opinions are persuasive. Plaintiffs failed to state a cause of action under a theory of strict liability and the court properly dismissed Count III.

■ Plaintiffs' theory of liability under implied warranty is based upon *Smith v. Old Warson Development Company*, 479 S.W.2d 795 (Mo. banc 1972). That case held that a purchaser of a new home from the builder-vendor may maintain an action for a latent defect in the house as a breach of an implied warranty of habitability or quality. Plaintiffs are not the purchasers of this building; they are tenants. *Smith* created a narrow exception to the rule of *caveat emptor*. It has not been expanded in this state to encompass the landlord-tenant relationship. We have no basis for expanding it here, and particularly not when doing so would create liability for a defect created fourteen years before the accident. The policy considerations set forth in *Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo. banc 1978) [2–5] for restricting the applicability of *Smith* are fully pertinent here. The trial court properly dismissed Count IV and Count V.

■ Counts I and II were premised on negligence. Plaintiffs seek to impose liability on Heidelbaugh and Campbell as the original developers on a respondeat superior theory. They, in turn, seek to pursue that liability against MIT as a continuation of Heidelbaugh/Campbell. The undisputed evidence before the trial court when the summary judgment was granted was that the defect was latent and Heidelbaugh/Campbell would have the requisite knowledge necessary to impose liability only if they are responsible for the negligence of the contractor who installed the stairway. Heidelbaugh/Campbell would not be vicariously liable for the negligence of an independent contractor. *Williamson v. Southwestern Bell Tel. Co.*, 265 S.W.2d 354 (Mo.1954) [6].

Normally whether the relationship of employer-independent contractor exists is a question of fact, but where the material facts from which it is to be inferred are not in dispute it becomes a matter of law if only one reasonable conclusion can be drawn. *Greco v. ABC Transnational Corporation*, 623 F.Supp. 104 (D.C.Mo.1985) [3–5]. The determination is based upon the level of control by the alleged employer over the alleged independent contractor. *Id.* at [2].

As stated in *Williamson v. Southwestern Bell Tel. Co., supra* [3–5]:

" 'An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.' [Quoting from the Restatement, Agency]. Under the rule, 'stipulations which entitle the employer to exercise a certain measure of control over the work, but go no further than to enable him to secure that it shall be properly performed, do not affect the quality of contracts, which apart from those stipulations, would be construed as independent.' [Quoting from 20 A.L. R.]."

Heidelbaugh/Campbell hired Don Barkley, d.b.a. Archway Construction Company, as the carpentry contractor and the person who ran the construction site and the job. Neither Barkley nor Archway were joined as defendants in this suit. Archway was listed on the building permit as the contractor for the apartment project. Campbell was responsible for handling assembly of the parcels of land, zoning and development strategies. Heidelbaugh obtained architectural plans, handled financing, obtained the contractor, and visited the job site to check on the progress of the work to see if the contractor was meeting the construction financing time schedule. Heidelbaugh did not direct the actual construction work and lacked the training or experience to do so. The description of Barkley's authority provided by defendants in support of their motions for summary judgment is the classic description of an independent contractor. In opposition to the motions,

plaintiffs relied entirely on a single answer given by Heidelbaugh in his deposition. That answer was that he would visit the construction site periodically to see how the work was progressing "to see if everything was being properly constructed." This single answer, taken in the context of the entire deposition demonstrates no more than that Heidelbaugh exercised "a certain measure of control over the work" going "no further than to enable him to secure that it shall be properly performed." There was no material issue of fact concerning Barkley's status as an independent contractor and the trial court correctly granted summary judgment on Counts I and II.

Judgment affirmed.

KAROHL, P.J., and KELLY, J., concur.