**Samuel J. DENTY and Carolyn M. Denty, Plaintiffs–Respondents,**

v.

**W.K. McCALL and Patsy McCall, Defendants–Appellants.**

**No. WD 40309.**

Missouri Court of Appeals, Western District.

Oct. 18, 1988.

Milton B. Garber, Garber & Garber, Fulton, for defendants-appellants.

D. James Mariea, Whitlow, Riley, Mariea & Dunlap, Fulton, for plaintiffs-respondents.

Before TURNAGE, P.J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Samuel J. Denty and Carolyn M. Denty sued W.K. McCall and Patsy McCall for a breach of warranty of habitability or quality of a new home. *Smith v. Old Warson Development Co.*, 479 S.W.2d 795 (Mo. banc 1972). The case was tried to the court and the court entered judgment in favor of Denty in the amount of $9,110. McCall contends that Denty failed to mitigate damages and that there was no evidence to support the amount of damages awarded. Affirmed.

Denty purchased a new home from McCall in 1981. After moving in Denty began noticing the windows would not open properly and that it was impossible to operate the locks on the windows. In addition, they noticed doors sticking and cracks in the brick exterior.

Denty talked with some contractors and eventually hired a civil engineer to inspect the house and provide him with an expert opinion of what should be done. Tom Wilcox was a civil engineer who previously served as city engineer for the City of Fulton. Wilcox examined the house and examined holes which were drilled to correct the damages for the purpose of ascertaining the depth and width of the footings. Wilcox determined that the footings along the north and east walls were of uneven width and were not as deep as the building code required. Wilcox stated that the house had settled unevenly with the east side settling about 2¼". This had caused the house to begin splitting. Wilcox said the reason the north and east settled more was because the footings on those sides were too narrow and did not extend below the frost line. The east side of the house carried greater weight because it was almost two stories of brick and a chimney

was on that side. He said the narrowness of the footings causes greater pressure to be exerted on the soil from the weight of the house which caused faster settlement. The fact that the footings did not extend below the frost line allowed for freezing and thawing below the footings which also caused faster settling.

Wilcox stated that the only reasonable solution to the problem was to drive piers to bedrock under the foundation and attach brackets which would support the house.

Although McCall concedes that the footings were not in compliance with the building code, he testified that the settlement was caused by the soft soil.

Denty followed the Wilcox recommendation and hired the Perma Jack Company which gave him a bid of $10,125. Denty actually paid $10,975 because some piers had to be driven deeper than 30 feet to reach bedrock.

Denty had earlier obtained a bid for $2,000 to extend the footings to 30 inches, which would barely reach the frost line. He also had obtained a bid of $8,000 to extend the footings deeper and to treat the soil with dry cement.

In his first point, McCall contends that the Dentys should be restricted in their recovery to one of the two lesser bids because Denty was only entitled to a house with footings which complied with the building code. McCall overlooks the testimony of Wilcox that the only reasonable solution to the settlement problem was to use the Perma Jack method of extending piers to bedrock. Wilcox stated that simply extending the footings to the frost line at this time would not solve the problem because it would only add weight to the house and future settlement would occur. He said there were instances in which concrete could be inserted under a structure such as a bridge but that this was not satisfactory for use in homes.

There was evidence from which the court found that the only reasonable solution to the defect in the footings was the Perma Jack method. The court did not err in refusing to restrict damages to the two cheaper bids.

■ McCall next contends there was no evidence to support the amount of damages because McCall testified, as a real estate expert, that in his opinion the value of the house was the same as its value on the date it was sold to Denty. Denty produced a real estate expert who testified that the value of the house had depreciated ten to twenty percent from its purchase price due to the defective footings. Denty paid $91,-110 for the house and ten percent of that would be $9,110, the amount of the judgment.

■ There was evidence to support the award of damages from the real estate expert. The measure of damages in this case was the difference between the value of the house at the time of its sale as warranted and its defective condition, or the cost of correcting the defect, whichever is lower. *Major v. Rozell,* 618 S.W.2d 293, 296 (Mo.App.1981). The evidence was that the reasonable solution of the problem cost $10,975 and the decrease in value was $9,110. The court correctly entered judgment for the lesser amount.

The judgment is supported by substantial evidence and is affirmed.

All concur.