Everett Robert BUSS and Patricia
Buss, Respondents–Appellants,

v.

Vinton F. HORINE, Sr., Jean Horine, By-
ron Horine, and Horine Farms, Inc., a
Missouri corporation, Appellants–Re-
spondents.

Nos. 17134, 17137.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 25, 1991.

Motion for Rehearing or Transfer to
Supreme Court Denied
Dec. 16, 1991.

Lisa A. Ghan, Craig F. Lowther, Lowth-
er, Johnson, Joyner, Lowther, Cully &
Housley, Springfield, for appellants-respon-
dents.

David P. Vandagriff, Monett, for respon-
dents-appellants.

PARRISH, Judge.

Everett Robert Buss [1] brought an action
against Vinton F. Horine, Sr., Jean Horine
and Byron Horine (the Horines) and Horine
Farms, Inc. (the corporation).[2] The case
proceeded to trial on a nine-count first
amended petition. Plaintiff Everett Robert
Buss' causes of action were based upon the
condition of a waste lagoon that was part
of a dairy farm that he leased pursuant to
a lease with option to purchase, and later
purchased, from the corporation. The cor-
poration filed a three-count counterclaim
seeking ejectment of plaintiffs from the
dairy farm (Count I), damages for breach
of contract based upon the terms of the
lease with option to purchase that it had
entered into with Everett Robert Buss

1. Patricia Buss is also designated as a plaintiff
in the first amended petition upon which this
case went to trial, although she is a party only
to the counterclaim brought by defendant cor-
poration against her and Everett Robert Buss.

The term "plaintiffs" will be used to identify
Everett Robert Buss and Patricia Buss, jointly.

2. The Horines and the corporation shall be re-
ferred to, collectively, as defendants.

(Count II), and an injunction against plaintiffs possessing and entering upon the dairy farm (Count III). The trial court entered judgment for plaintiff Everett Robert Buss, and against the corporation, on one count of the amended petition (Count IV) and ordered the contract between plaintiff Everett Robert Buss and the corporation rescinded. The trial court directed the return of money (with interest) that had been paid to the corporation by plaintiff Everett Robert Buss. Judgment was entered for all defendants on the eight other counts of the first amended petition and, as to Count IV, "on plaintiff Everett Robert Buss's claim for damages." The trial court entered judgment for the corporation on Counts I and II of the corporation's counterclaim. The trial court directed plaintiffs to surrender possession of the dairy farm to the corporation (Count I) and awarded damages for "back rentals," together with interest, to the corporation (Count II). Count III of the corporation's counterclaim was deemed moot and "dismissed with prejudice." This court reverses and remands the case for a new trial.

Vinton F. Horine, Sr., and Jean Horine purchased a dairy farm in Lawrence County, Missouri, in 1978. That same year they formed the corporation, Horine Farms, Inc. The dairy farm was conveyed to the corporation. Vinton, Sr., Jean and Byron were shareholders, directors and officers of the corporation. They undertook to develop the property as a grade A dairy farm. Their efforts to make the property a grade A dairy farm included construction of a lagoon to be used to dispose of animal waste. The lagoon was intended to be used to temporarily hold and treat dairy cattle waste. It was designed so that it would be "pumped down" when it filled to a certain level. The contents, when the lagoon was pumped down, were to be spread over cultivated ground or pasture for irrigation. The lagoon was designed to accommodate a 200–cow dairy operation. It was expected to require "up to four pump downs per year."

An earthen lagoon was constructed. During the course of the construction, a sinkhole was discovered in an area near the lagoon's northwest corner. A backhoe was used to repair the sinkhole during the construction of the lagoon by placing a substance identified as bentonite, mixed with clay, in the area of the sinkhole. The bentonite-clay mixture was "spread and tamped in."

After the lagoon was constructed, the most dairy cattle that were milked at the farm at any time was 55 cows. The waste from the cows and the wash-water that was used to rinse the lines through which milk traveled went into the lagoon. Between August 1978, when the lagoon was constructed, and January 1981, when the corporation entered into a lease with option to purchase with plaintiff Everett Robert Buss, the water in the lagoon was never deeper than two or three feet. The maximum storage depth for which the lagoon was constructed was twelve feet. The lagoon was never pumped nor was equipment purchased by the corporation or the Horines with which to pump the lagoon. Rainfall in 1979 was about 42 inches, the approximate average annual rainfall for the area. Other lagoons in the area had water in them during this time.

The lease with option to purchase provided for payment of rent by Buss in the amount of $2,200 per month for one year. Buss was required to pay $10,000 for an option to purchase the leased property. The sales price, in the event the option was exercised, was $432,000 with credit to be allowed for the $10,000 option payment. Rental payments were not to be applied to the purchase price. The purchase agreement provided for the corporation to finance part of the purchase price for a five-year period. Buss exercised the option to purchase when the lease terminated. At that time Buss did not know that there was a sinkhole in the lagoon.

After buying the dairy farm, Buss improved the property and began increasing the size of his dairy herd. In 1983 Buss told defendant Vinton Horine that the lagoon was not holding water. Buss had not been previously told, nor did he know then, that there was a sinkhole in the lagoon. Buss was unable to expand his dairy opera-

tion because of the lagoon's failure to hold water.

Buss notified defendant Vinton Horine that the deficiency in the lagoon needed to be corrected so that Buss could increase the size of his dairy operation. Defendant Vinton Horine then notified Buss that the corporation would amend the payment schedule for that part of the purchase price that the corporation had financed. Later, the corporation and Buss entered into a written agreement amending the payment terms. Vinton Horine told Buss, in a letter, that he hoped Buss could "proceed with these necessary improvements and repairs."

In September 1987, a representative of the Missouri Department of Natural Resources (DNR), George Parsons, inspected the lagoon. A later report on the condition of the lagoon, made by a geologist from DNR, stated that although the waste from only 30 dairy cattle was entering the lagoon, it was leaking in excess of permissible standards; water supply in the vicinity of the lagoon was at risk; a potential for a sinkhole collapse existed; and the construction procedures that had been used to build the lagoon were inadequate in that the lagoon was not sealed.

In December 1987, Buss reviewed the Lawrence County ASCS records concerning the lagoon on his farm. He found records indicating that there was a sinkhole in the lagoon and that advice had been given at the time the lagoon was constructed that the hole should be filled with bentonite. Buss also discovered a letter from Vinton Horine by which Horine had submitted bills to the ASCS office for payment. The bills that had been submitted with the letter included a bill to Byron Horine for bentonite.

The nine counts in the first amended petition are neither brief nor precise with respect to the facts alleged. The counts alleged alternate remedies or theories of recovery.

Count I of the first amended petition contained 20 numbered paragraphs of pleaded facts, followed by an additional allegation (paragraph 21 of Count I) "[t]hat

Plaintiff has no adequate remedy at law" and that unless instruments and agreements that were executed between the parties "are cancelled, annulled and rescinded, Plaintiff will suffer irreparable injury and damage."

The prayer in Count I asked for rescission and for imposition of "a constructive trust on Plaintiff Robert Buss' funds in the hands of Defendants in the sum of $259,984.00 in favor of Plaintiff Robert Buss" plus costs. It sought declaration of a special lien to secure that amount "against the right, title and herein [?]," together with "such further orders and judgments as shall be meet and proper in the premises."

This court perceives Count I as an action seeking rescission of the transaction between Everett Robert Buss and the corporation for fraud, the fraudulent misrepresentation being "false and fraudulent information and facts with respect to the waste disposal lagoon."

Count II of the First Amended Petition "reallege[d] the allegations of Count I." It then stated in its paragraph 2 "[t]hat Defendants are in possession of monies had and received from Plaintiff Robert Buss in the amount of $259,984.00, which under principles of equity and fair conscience they should return to Plaintiff Robert Buss." The prayer asked for money judgment (plus interest) and for declaration that the judgment "be a special lien against the right, title and interest of the Defendants in and to the real estate described herein."

Count III "reallege[d] the allegations of Counts I and II." It further stated that "Plaintiff Robert Buss" paid defendants $259,984 and that:

he has provided extensive improvements ... at great expense, and he has been unable to operate a two hundred (200) head dairy farming operation as planned and intended and of which Defendants had knowledge, causing him to lose great profit and income now and in the future, which damages to Plaintiff are and were

the proximate result of Defendants' actions described herein.

Count III sought money damages "by reason of Defendants' fraud, deceit and misrepresentation." The prayer in Count III asked for judgment "in the sum of $259,-984.00 plus interest plus damages for improvements to the land and lost profits and income that are fair and reasonable." It also sought for the judgment to be declared a special lien on the real estate upon which the dairy farm is situate.

Count IV again realleged the allegations stated in Counts I, II and III. It then stated that defendants breached the terms of the contract to which plaintiff Everett Robert Buss was a party and that defendants breached "implied and express warranties by not providing to Plaintiff Robert Buss an operative and usable waste disposal lagoon with a capacity for 200 dairy cows." In Count IV plaintiff Everett Robert Buss asserted that the dairy farm was inoperable and useless as a dairy farm in the manner that had been intended. Count IV alleged that plaintiff Everett Robert Buss was damaged in the amount of $259,-984, the amount paid by him for the dairy farm. It alleged that he also provided extensive improvements and lost profit and income and in the future would lose profit and income. The prayer in Count IV sought money damages and requested the court to enter judgment and declare the judgment to be a special lien upon the real estate on which the dairy farm was situate.

By Count V of the first amended petition, plaintiff Everett Robert Buss realleged the allegations contained in Counts I through IV. Count V further alleged that defendants had threatened to recall documents and monies that were being held in escrow. It recited that the plaintiff had been required to notify the escrow agent of an existing dispute thereby imposing a duty upon the escrow agent to hold documents and monies in his hands until the dispute was resolved. In Count V plaintiff alleged that if defendants withdrew documents and monies then in escrow, plaintiff Everett Robert Buss would be entitled to a return of all monies paid to defendants under the terms of the lease with option to purchase. The prayer asked for relief in the event documents and monies were withdrawn from escrow by defendants and sought money judgment accordingly. The prayer in Count V further requested that any money judgment be made a special lien upon the real estate where the dairy farm was situate.

Count VI of the first amended petition realleged the allegations set forth in Counts I through V. It stated that pursuant to the terms of the lease with option to purchase that was entered into by plaintiff Everett Robert Buss, Buss had "an exclusive right to purchase all personal property" that was listed on an exhibit attached to the agreement. Count VI alleged that this included a "complete washing system" and that this included an operational waste disposal lagoon. Count VI alleged that the waste disposal lagoon was defective and would require substantial construction and excavation "at great expense" in order for the lagoon to hold water. The prayer in Count VI requested the court to order specific performance of the contract and to direct defendants to undertake whatever repairs would be necessary to make the waste lagoon and "associated equipment" a complete washing system for the dairy farm.

Count VII of the first amended petition realleged the allegations included in Counts I through VI. It stated that the corporation was "the alter ego" of the Horines, who controlled the corporation, and that the corporation was indistinguishable from those persons. Count VII alleged that the corporation was insolvent, "having had substantially all of its assets, including the $259,984.00 paid to it by Plaintiff Everett Robert Buss, withdrawn from said corporation for the benefit of the individual Defendants." Count VII alleged that it was necessary "to avoid fraud," for the court to "look through" the corporation to the officers, directors and shareholders of the corporation "and to impose on said officers, directors and shareholders individual liability for the purported actions of the corporation and for the siphoning of corporation assets, including sums paid by Plaintiff,

out of the corporation." The prayer in Count VII requested judgment declaring the corporation to be an alter ego of the Horines and declaring that the Horines be liable for any obligation impressed upon the corporation as a result of any judgment of the court.

In Count VIII, plaintiff Robert Buss realleged the allegations in Counts I through VII. Count VIII stated that the corporation had failed to provide a complete washing system on the dairy farm and had, therefore, failed to fully perform the lease with option to purchase. Count VIII alleged that since the corporation was unable to fully perform its agreement with Everett Robert Buss, that the corporation was required to refund to him the $10,000 paid for the option to purchase the property "together with the reasonable expenses of Mr. Buss." The prayer to Count VIII sought judgment against defendants for $10,000 plus reasonable expenses incurred by Buss "estimated to be no less than $400,000.00 plus interest." The prayer further sought the court to declare any judgment entered a special lien against the real estate upon which the dairy farm was situate.

In Count IX plaintiff Everett Robert Buss restated and realleged the allegations that were contained in Counts I through VIII. Count IX stated that because the corporation failed to provide a complete washing system on the farm, the corporation had failed to fully perform under the lease with option to purchase. It alleged that the agreement made no provision for the corporation to "keep any portion of the purchase price of said farm in the event of a default or cancellation of said Agreement"; that should any of the defendants be permitted to retain sums that had been paid to them by plaintiff Everett Robert Buss, "Plaintiffs [sic] will be unjustly enriched at Plaintiff's expense." The prayer to Count IX sought judgment in the amount of $259,984 plus interest "plus damages for improvements to the land and lost profits and income that are fair and reasonable" and costs. The prayer further requested the court to declare the judg-

ment a special lien upon the real estate where the dairy farm was situate.

Defendants filed an "Amended Counterclaim" as part of their Amended Answer to First Amended Petition and Amended Counterclaim. It consisted of three counts. Count I of the counterclaim asserted that plaintiffs were unlawfully withholding possession of the real estate upon which the dairy farm was situate from the corporation. By Count I the corporation sought an order "ejecting Plaintiffs from the premises, and awarding Defendant damages in an amount not less than $40,000.00."

In Count II of the counterclaim, the corporation alleged that plaintiffs had defaulted by failing to make payments that were due September 1, 1987, and March 1, 1988. Count II alleged that this constituted a breach of contract and sought damages in the amount of $100,000, plus interest.

In Count III of the counterclaim, the corporation alleged that plaintiffs had defaulted in the payment of "purchase money payments" and that the corporation had "been effectively deprived of any rents, profits and income which could be derived from the aforedescribed property." Count III alleged that the corporation had no adequate remedy of law and that plaintiffs "should be enjoined from retaining possession of said premises and should be further prevented from entering on the premises." By Count III of its counterclaim, the corporation requested the court to enter an injunction permanently enjoining plaintiffs from retaining possession of the dairy farm and from entering upon its premises.

■ A party has a right to plead two or more claims alternatively. Rules 55.10 and 55.06(a). This may be done "regardless of consistency and whether based on legal or equitable grounds." Rule 55.10. In *State ex rel. Hilleary v. Kelly*, 448 S.W.2d 926, 931 (Mo.App.1969), the court stated that pursuant to what is now Rule 55.10 (prior Rule 55.12), "upon the institution of his action a plaintiff may set forth statements of two claims alternatively, even though they are inconsistent, and may pursue such inconsistent claims until in some effective manner he makes an election between such

remedies." "Rule 55.06 permits a plaintiff to plead what are, in essence, two inconsistent claims, but an election must eventually be made." *Mitchell v. Commercial Standard Ins. Co.*, 612 S.W.2d 378, 379–80 (Mo. App.1980). It is error to overrule a motion to require a buyer to elect between a breach of contract claim and a claim for rescission. *See Grand River Township, De Kalb County v. Cooke Sales & Service, Inc.*, 267 S.W.2d 322, 323 (Mo.1954).

The record on appeal indicates that a motion to compel election of remedies was filed. The trial court's "Findings of Fact and Conclusions of Law and Judgment" states, in its first paragraph, "A motion to Compel Election of Remedies was overruled." The legal file does not include a copy of that motion. The transcript refers to election of remedies at the end of the trial proceedings. At that time, in addressing a number of procedural items, the trial judge, apparently on December 1, 1989, stated that additional items were to be provided for his use "which will be due on December the 8th." The trial judge continued, "Thereafter, the Court will entertain the matters involving motions for judgment at the close of the Plaintiffs' Case, and at the close of all of the evidence, *and deal with the election of remedies.*" (Emphasis added.) It appears that a motion to elect remedies was pending at the close of the evidence in the case and that the trial court subsequently denied the motion.

Neither party complains on appeal about the denial by the trial court of the motion to elect remedies. It is nevertheless appropriate to note that confusion generated in this case by the intertwinement of inconsistent claims for relief and alternative remedies would likely have been avoided had the motion to elect remedies been granted and an election of remedies timely made.

The trial court entered judgment in favor of plaintiff Everett Robert Buss against the corporation on Count IV of the first amended petition—the count by which plaintiff sought money damages for breach of contract and for "implied and express warranties." In its judgment the trial court further ordered "that plaintiff have rescission." [3] The judgment declared "the Real Estate Lease with Option to Purchase, Escrow Agreement, Notice of Exercise of Option and Agreement to Amend Real Estate Lease with Option to Purchase" as set aside, cancelled, annulled, and rescinded. Judgment was entered "on Count IV" in the amount of $465,846.28. [4] That judgment was declared "to be a special lien against the right, title and interest of the real estate of Horine Farms, Inc."

The trial court awarded the individual defendants, the Horines, judgment against plaintiff Everett Robert Buss on Count IV. It further awarded "all defendants" judgment against plaintiff Everett Robert Buss on the remaining counts of the first amended petition.

As to the counterclaim, the trial court entered judgment on Count I of the amended counterclaim, the corporation's action for ejectment, awarding possession to the corporation. It entered judgment on Count II, the corporation's action for breach of contract, in favor of the corporation "for rentals ... in the amount of $220,000.00 together with accrued interest at 9% through August 1, 1990, and in the sum of $103,158.00 or total judgment of $323,-158.00." The trial court dismissed Count III, the corporation's request to enjoin plaintiffs from having further occupancy of the dairy farm.

Two appeals were filed and have been consolidated before this court. The corporation's appeal is No. 17134. Plaintiffs' appeal is No. 17137. The Horines, individu-

---

3. Count IV did not seek rescission. Count I sought rescission based upon an allegation of fraud. The trial court found, "While ... the acts of silence of defendants tread dangerously close to establishing fraud, the Court does not find that plaintiff has met its burden of proof to establish fraud or misrepresentation as alleged in Count I."

4. The judgment recites that it is for "$290,747.50 together with accrued interest at 9% through August 1, 1990 and in the sum of $175,098.53 or total judgment of $465,846.28." The sum of $290,747.50 and $175,098.53, however, is $465,-846.03. The difference of $.25 is *de minimis* and is noted for information.

ally, do not appeal. The Horines (as well as the corporation) are respondents in No. 17137.

■ In No. 17134 the corporation presents two points on appeal. The first point states:

> The trial court erred in granting plaintiffs' [sic] claim based upon an implied warranty theory because the court misstated and admittedly misapplied the law in regard to this sale of real estate pursuant to a real estate lease with option to purchase, as amended, in that caveat emptor is the general rule unless plaintiffs were first-time purchasers of a home with a latent structural defect.

The corporation's second point on appeal alleges, alternatively, that the trial court erred by excluding certain testimony with reference to repairs and upkeep to the dairy farm. The corporation contends the court's ruling on the evidentiary question was a misapplication of law. As follows, this court determines that the corporation's first point on appeal is determinative. For that reason, the alternative point is not reached.

The trial court found that the corporation, when it sold the dairy farm to Everett Robert Buss, "knew or should have known that [he] intended to use the dairy sewage lagoon in the disposal of waste management"; that Buss "reasonably relied upon the statements that the lagoon was designed for 200 cows (in a dairy operation), that said lagoon was dry because of the dry summer, and Buss relying upon later statements and representations by the Horines as to the lagoon's design had a right to rely on there being no concealment, i.e. the void and filling with bentonite, the statements ... that the lagoon wasn't working and didn't hold water." The trial court concluded that the lagoon "was not fit for its intended use as a dairy sewage lagoon"—that there was "substantial evidence that the lagoon leaked and had never held water properly." The court then concluded that "principles enunciated in *Smith v. Old Warson Development Company*[,] 479 S.W.2d 795 (Mo.En Banc 1972)" applied upon a theory of breach of implied warran-

ty of fitness or merchantability. Based upon the trial court's analysis that there had been a breach of an implied warranty, it determined that there had not been full performance by the corporation of the contract whereby Everett Robert Buss leased the dairy farm and acquired an option to purchase it from the corporation.

The trial court erred in its reliance on *Smith v. Old Warson Dev. Co., supra.* In that case, purchasers of residential property brought an action for damages against an owner-developer who had sold them a house that had been constructed for use as a display home. 479 S.W.2d at 797. The purchasers' action was in two counts; one seeking relief for breach of an implied warranty and one seeking relief for negligence of the owner-developer. However, the case was submitted for determination on the implied warranty theory. *Id.* at 798. The purchasers alleged that a four-inch concrete slab was surrounded by foundation walls, but was not attached to the foundation walls and that this caused the concrete slab to sink and settle. This caused structural problems that affected the reasonable fitness of the house for use as a residence. *Id.* at 797. The Supreme Court of Missouri held that warranties of merchantable quality and fitness exist in transactions where a first purchaser purchases a new home from a vendor-builder. The court recognized that exception to the doctrine of caveat emptor by determining that "the purchase of a residence is in most cases the purchase of a manufactured product—the house." *Id.* at 799. The court stated:

> However, it should be recognized that the rationale for allowing recovery by a purchaser of a new house, on a theory of breach of an implied warranty of habitability or quality, is applicable only against that person who not only had an opportunity to observe but failed to correct a structural defect, which, in turn, became latent, i.e., the builder-vendor.

*Id.* at 801. The court also noted that the caveat emptor rule is relaxed only in the limited area of first purchasers. It noted that "[t]he ordinary 'consumer' can determine little about the soundness of the con-

struction but must rely upon the fact that the vendor-builder holds the structure out to the public as fit for use as a residence and of being of reasonable quality." *Id.* at 799.

The defective lagoon is agricultural or commercial real estate, not residential property. In *Volume Services, Inc. v. C.F. Murphy & Assoc.*, 656 S.W.2d 785, 793 (Mo.App.1983), the court noted that a cause of action for implied warranty of fitness had not been extended to non-residential commercial buildings. In this case not only is the property agricultural or commercial, it is not even a building. The earthen berm lagoon was the product of excavation. As discussed in *Old Warson, supra,* at 799, "[t]he structural quality of a house, by its very nature, is nearly impossible to determine by inspection after the house is built, since many of the most important elements of its construction are hidden from view." Although the ability to see the floor of a working lagoon may be obscured by the water it holds, or, with respect to a faulty lagoon, as here, a defect that affects a lagoon's ability to hold water may not be immediately evident, the components of a lagoon are not as extensive or as complex as the hidden elements of a house's construction. A prospective purchaser of property on which there is a lagoon may make inquiries of persons familiar with the lagoon to attempt to learn if the lagoon has held water. Likewise, the same search of government records as was ultimately made by plaintiff Everett Robert Buss when he reviewed records in the Lawrence County ASCS office may provide information about the lagoon's construction. This court declines to equate the complexities of the components of a lagoon with the complexities of the many hidden elements in the construction of a house. The principles that extend a cause of action for implied warranty of fitness for habitation to first-time purchasers of houses from builder-vendors as enunciated in *Old Warson* are not applicable to this case. The corporation's first point on appeal is well-taken. The trial court erred in granting judgment to plaintiff Everett Robert Buss based upon the breach of an implied warranty by the corporation. There was no implied warranty present. The judgment on Count IV for plaintiff Everett Robert Buss must be reversed.

■ Although not determinative for the reason that the judgment on Count IV must be reversed for the reasons stated in granting the corporation's first point on appeal, the trial court also committed error by ordering rescission based upon Count IV of the first amended petition. Count IV sought recovery for breach of contract and for breach of express and implied warranties. It did not request the remedy of rescission. As explained in *Cox v. Blackwell,* 661 S.W.2d 831, 832 (Mo.App.1983), "[w]here plaintiffs ... have available inconsistent remedies, i.e., rescission and suing for damages, they have the right to elect which course they will choose and once plaintiffs make the election, the court has no right to change the cause of action to the other inconsistent theory." In this case, although "[a] party to a contract may elect to rescind upon a breach by the other party," *Iota Mgmt. Corp. v. Boulevard Investment Co.,* 731 S.W.2d 399, 415 (Mo. App.1987), plaintiffs never sought rescission on that basis.

Having determined that it would grant rescission in finding for plaintiff Everett Robert Buss on Count IV of the first amended petition, the trial court concluded "[t]hat to effect the status quo, [the corporation] ought to be placed in immediate possession of the property." On that basis the trial court awarded judgment to the corporation on Count I of the amended counterclaim—the corporation's action for ejectment—for possession to the corporation and awarded judgment to the corporation on Count II of the amended counterclaim for what the trial court determined was fair and reasonable rentals. The trial court granted judgment on Count II of the amended counterclaim in favor of the corporation and against plaintiffs in the amount of $220,000 with interest on "back rentals" at 9% per annum in the amount of $103,158, for a total award of $323,158. The trial court dismissed Count III—the corporation's request to enjoin plaintiffs

from having further occupancy of the dairy farm.

The judgment of the trial court on the corporation's counterclaim must also be reversed. Judgment was entered for the corporation on Counts I and II of the amended counterclaim on the basis that it would return the parties to the status quo and thereby serve as a means to effect the restitution that was erroneously ordered by the trial court by its judgment for plaintiff Everett Robert Buss on Count IV of the first amended petition. Since the judgment on Count IV of the first amended petition must be reversed, so must the judgments entered by the trial court on Counts I and II of the amended counterclaim.

For the foregoing reasons, it is unnecessary to address, in detail, the points on appeal that plaintiffs present in No. 17137.[5] However, because there is to be a new trial, and because one of the issues raised by plaintiffs is a procedural question of law that could be applicable to the entry of a judgment following the new trial, it is appropriate to comment, generally, on that issue.

Plaintiffs complained by their third point on appeal that the trial court erred in entering two separate judgments in this case, one on the count of the amended petition upon which the trial court awarded judgment to plaintiff Everett Robert Buss and a second on the counts of the amended counterclaim upon which the trial court awarded judgment to the corporation. Plaintiffs contend that if money awards are made both on a petition and a counterclaim as between the same parties, one judgment should be entered for the net difference in the awards. Plaintiffs' contention in that regard is well-taken. "[O]ne final judgment should be entered, which in the usual practice, recites the respective findings,

and concludes with a judgment for the party in whose favor the greater finding was made, and for a sum which represents the excess over that found for his adversary." *Rehm v. Fishman*, 395 S.W.2d 251, 255 (Mo.App.1965).

The judgment is reversed and the case is remanded for new trial. The trial court is directed to give the parties leave, if they make a timely request therefor, to amend their respective pleadings. If inconsistent remedies are pleaded and if a request for election of remedies is made at an appropriate time, that request should be granted.

PREWITT, P.J., and CROW, J., concur.

---

**5.** The points on appeal in No. 17137 that are directed to findings made by the trial court on alternative causes of action upon which the trial court did not grant relief are not reviewed. A review of those points would be meaningless since the trial court did not base the relief that it granted upon the alternate claims. When a party alleges inconsistent remedies, he or she is entitled to pursue only one such remedy to final judgment. *See Alexander v. Link's Landing, Inc.*, 814 S.W.2d 614, 620 (Mo.App.1991). Here, plaintiff Everett Robert Buss made no election of a remedy. The trial court chose to grant relief on Count IV, a claim for breach of contract and breach of express and implied warranties. This court has reviewed the action taken by the trial court upon the claim upon which it granted relief.