Linda and Joseph TRIEN, Respondents,

v.

CROASDALE CONSTRUCTION CO., INC., et al., Appellants.

Linda and Joseph TRIEN, Appellants,

v.

CROASDALE CONSTRUCTION CO., INC., et al., Respondents.

Nos. WD 47178, WD 47223.

Missouri Court of Appeals, Western District.

March 1, 1994.

Rehearing Denied May 3, 1994.

Larry James Tyrl, Joseph A. Sherman, Kansas City, for Croasdale Const. Co.

George Edward Kapke, Independence, for Linda and Joseph Trien.

Before BRECKENRIDGE, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

Plaintiffs, Joseph and Linda Trien, contracted with defendant, Croasdale Construction Co., for the construction of a new residence in Parkville, Missouri, on a lot in a subdivision being developed by Croasdale. The contract for the construction of the house consisted of three documents—the basic contract, a document entitled "Description of Materials," and blue prints and drawings of the house.

After the house was completed by Croasdale, plaintiffs moved into the house. They discovered two defects in the house. The alleged defects were, first, that the septic tank would not perform its sewage disposal function, as a result of which the effluent surfaced; and, second, that the interior of the house was not dust-free.

Shortly after the Triens occupied the house, effluent began to surface in the vicinity of the septic tank. Croasdale added additional laterals, but this did not cure the problem. The plaintiffs had another architect conduct percolation tests on the soil. The results of these tests were different. from those secured by Croasdale's architect, which had been submitted to the Platte County Health Department in order to secure the construction permit. The later tests showed that the soil was not permeable, so as to accommodate a sewage disposal system like the one which was installed at the Trien house.

There was evidence also that there was an excessive amount of dust in the house. The Triens expected a dust-free house. There was evidence Croasdale had assured the Triens that the house would have a dust-free environment. The Triens complained to Croasdale about the dust. The heating and air-conditioning subcontractor made an inspection, but the difficulty was not remedied.

At length, plaintiffs filed the present lawsuit against Croasdale. A jury trial resulted in two verdicts in plaintiffs' favor and against Croasdale, each in the amount of $49,500 (thus totalling $99,000). One of the verdicts was on what Croasdale characterizes as a submission of breach of implied warranty of habitability, and the other on a submission of breach of express warranty. Judgment was duly entered in accordance with the verdicts.

Both parties have appealed. Croasdale claims plaintiffs did not make a submissible case on either the implied warranty or express warranty claim—and, further, that the court erred in submitting the two claims in separate packages, which invited duplicative verdicts.

Plaintiffs in their cross appeal say the court erred in directing a verdict for Croasdale and against plaintiffs on plaintiffs' claim for rescission of the contract.

## IMPLIED WARRANTY OF HABITABILITY

We first consider Croasdale's contention that the evidence did not make a submissible case against Croasdale on the implied warranty of habitability theory.

The cause of action for implied warranty of habitability was recognized in Smith v. Old Warson Dev. Co., 479 S.W.2d 795 (Mo. banc 1972). There the plaintiffs bought a new house from the defendant, a subdivision developer who had built the house—or, rather, had the house built by a building contractor—as a demonstration house. When defects, hidden from buyer's view, began to show up in the house, plaintiffs brought suit against the builder-vendor. The court held proof of these facts entitled the buyers to recovery of damages for breach of an implied warranty of habitability.

Croasdale says Old Warson does not apply to our present situation, because "the implied warranty of habitability is inapplicable to contracts to build a home in accordance with plans and specifications."

■ We might be able to agree with Croasdale that the doctrine of implied warranty of habitability, announced by Old Warson, would not, because of the limitations with which the opinion hedged the doctrine about, apply to the present case. But the case was not submitted on Old Warson's narrow implied warranty of habitability. The claim was submitted on the hypothesis

(as stated in plaintiffs' verdict-directing instruction, a modification of MAI 25.03), that "when sold by defendant Croasdale Construction Company ... the home in Shelter Haven subdivision was *not fit for one of its ordinary purposes....*" (emphasis ours).

This cause of action was recognized in *O'Dell v. Custom Builders Corp.*, 560 S.W.2d 862 (Mo.1978). That case dealt with a faulty house design furnished by the defendant, who also was the contractor for part of the construction, although not for the foundation, where the fault developed. It is useful to quote from *O'Dell*, 560 S.W.2d at 870:

> "Although the court's discussion (in *Old Warson*) of the claimed implied warranty used the terms 'fitness,' 'quality,' 'merchantability,' and ultimately, 'habitability' interchangeably, it is clear that the warranty imposed in *Old Warson* ... was closely analogous to that found in § 400-2.314, which it therein termed 'implied warranty of merchantability.' ... Essentially, both the common law warranty and the statutory codification thereof may be said to require that the product be reasonably fit for the ordinary purposes for which it is used."

The court then added:

> "It is apparent, then, that the primary significance of *Old Warson* is [its] extension of the warranty by analogy to the sale of a completed new home." *Id.*

Croasdale attempts to bring itself within the protection of *Barrett v. Jenkins*, 510 S.W.2d 805 (Mo.App.1974) and *O'Dell v. Custom Builders Corp.*, 560 S.W.2d 862 (Mo. banc 1978), claiming that it was simply a contractor building a house according to plans and specifications furnished by the plaintiffs. There were, however, no plans or specifications by plaintiffs with reference to the sewage disposal system, beyond the contract provision that the system comply with the standards of the County Health Department. Croasdale's proposal to plaintiffs stated: "Sewage system as per County Health Department." The description of materials said: "Sewage Disposal: Individual system— TO BE DETERMINED BY LOCAL HEALTH DEPARTMENT." There was nothing else in the contract documents about the sewage disposal system. The plaintiffs left the construction of the sewage disposal system to the expertise of Croasdale. Its design, its approval by the Platte County Health Department, and its construction were exclusively Croasdale's to perform. The Platte County Health Department approved the design and installation in reliance upon percolation tests secured by Croasdale. The plaintiffs, of course, were not experts in the design and construction of sewage disposal systems, and relied upon Croasdale to design and install a workable, adequate sewage disposal system. *See, Kennedy v. Bowling*, 319 Mo. 401, 4 S.W.2d 438, 445 (1928); *Hotchner v. Liebowits*, 341 S.W.2d 319 (Mo. App.1960).

We hold the evidence was sufficient to support the submission and the verdict for breach of implied warranty of fitness for a particular use, namely, use as a home.

## BREACH OF EXPRESS WARRANTY

Croasdale claims the evidence was insufficient to support the verdict on the Triens' claim of breach of express warranty. In view of our holding upon the other two points, namely, that the implied warranty submission and verdict were supported by the evidence, and that the verdicts on the implied warranty submission and the express warranty submission were duplicative, we do not need to decide whether the evidence supported the express warranty submission and verdict. The two verdicts merged into one verdict for $49,500. Regardless whether the Triens made a submissible case on their claim of express warranty, the resulting judgment for $49,500 would be the same.

## DUPLICATE DAMAGES

■ Croasdale next claims the court erred in submitting the implied warranty claim and the express warranty claim in separate packages of instructions, each with its own verdict form, a submission which, Croasdale claims, invited, and secured, duplicate verdicts. In this contention, Croasdale must be sustained.

■ It is perfectly proper for a plaintiff to plead and to submit alternative theories for a single injury. *Browning–Ferris Indus.*

of *St. Louis, Inc. v. Landmark Systems, Inc.,* 822 S.W.2d 569, 571 (Mo.App.1992); *Sayers v. Bagcraft Corp. of Am., Inc.,* 597 S.W.2d 280, 282 (Mo.App.1980). However, one may not recover duplicate damages; one is entitled to one recovery only. *Diversified Graphics, Ltd. v. Groves,* 868 F.2d 293, 296 (8th Cir.1989); *Stewart v. Sioux City & New Orleans Barge Lines, Inc.,* 431 S.W.2d 205, 209 (Mo.1968). Thus, it is improper to give instructions that allow a jury to return damages that overlap or duplicate. *Kincaid Enter., Inc. v. Porter,* 812 S.W.2d 892, 901 (Mo. App.1991); *Clayton Brokerage Co. of St. Louis, Inc. v. Pilla,* 632 S.W.2d 300, 306 (Mo.App.1982).

In this case, the alleged damages from breach of the implied warranty and from the breach of the express warranty were the same, namely, faulty sewage disposal system and faulty—or nonexistent—dust-filtering system. Each damage instruction directed the same measure of damages, and each directed the award of the full damages. Each package of instructions included a verdict form. The verdicts on each of the two submissions were for the same amount, $49,500.

The error in the erroneous submission in this case is easily corrected, by the procedure used in *Kincaid,* 812 S.W.2d at 901. The judgment for $99,000 (the total of the two verdicts) will be set aside, and the cause remanded for the entry of a new judgment for plaintiffs against defendant for $49,500.

### CLAIM FOR RESCISSION OF CONTRACT

■ We turn now to plaintiffs' cross-appeal. They allege the trial court erred, at the close of all the evidence, in directing a verdict against them on a third count of their petition, which sought rescission of their contract with Croasdale. The court's ruling came when plaintiffs refused to elect whether to proceed on the rescission count (which sought to disaffirm the contract), and the implied warranty and express warranty counts (which were based upon an affirmance of the contract, and which sought damages for breach of the alleged express and implied warranties).

■ There was no error in the trial judge's action. The two remedies sought by plaintiff, the one a legal remedy, for money damages, and the other an equitable remedy, for rescission of the contract, present a classical case of irreconcilable inconsistency. The first proceeded upon the affirmance of the contract, and the second upon its disaffirmance. *Harris v. Union Elec. Co.,* 766 S.W.2d 80, 87 (Mo. banc), *cert. denied,* 492 U.S. 919, 109 S.Ct. 3245, 106 L.Ed.2d 592 (1989); *State ex rel Hilleary and Partners, Ltd. v. Kelly,* 448 S.W.2d 926, 931–32 (Mo. App.1969). The two theories may of course be pleaded in the same petition, but at some point an election must be made. *Buss v. Horine,* 819 S.W.2d 762, 767 (Mo.App.1991); *Mitchell v. Commercial Standard Ins. Co.,* 612 S.W.2d 378, 379–80 (Mo.App.1980).

In *Buss v. Horine,* the trial court, in a similar case to the one before us, failed to act on a motion, pending at the close of the case, to require election of remedies. 819 S.W.2d at 767. Said the appellate court: "... [C]onfusion generated in this case by the intertwinement of inconsistent claims for relief and alternative remedies would likely have been avoided had the motion to elect remedies been granted and an election of remedies timely made." *Id.*

In our case, the defendant at the close of all the evidence orally moved that plaintiffs be required to elect as between the damages remedy for breach of warranty, and the rescission remedy. Plaintiffs insisted upon their right to the rescission submission as well as the breach of warranty submissions. The court thereupon directed a verdict for defendant on the rescission count. Upon the plaintiffs' failure to make an election, the court did the practical thing; it made the election for plaintiffs, and directed a verdict against plaintiffs on the rescission count. *See Rosenblum v. Jacks or Better of Am. West,* 745 S.W.2d 754, 764 (Mo.App.1988).

We hold that the court was not in error in directing a verdict against plaintiffs and for the defendant on the rescission count.

### CONCLUSION

Judgment for plaintiffs on Counts II and III (breaches of implied and express warran-

ties) in the combined sum of $99,000 is affirmed to the extent of $49,500, and reversed as to the balance therof. Judgment for defendant and against plaintiffs on directed verdict on Count I (rescission) is affirmed.

All concur.